IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHARLES EUGENE MOORE, ) <br> AIS #297332, ) <br>  ) <br>    Plaintiff, ) <br>  ) <br> v. )   CIVIL ACTION NO. 2:19-CV-693-WKW-CSC <br>  ) <br> RENARD LEWIS, et al., ) <br>  ) <br>    Defendants. ) | |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Charles Eugene Moore, an inmate incarcerated in the Limestone Correctional Facility in Harvest, Alabama, filed pro se this civil rights action under 42 U.S.C. § 1983 alleging certain violations of his federally protected rights while incarcerated in the Kilby Correctional Center ("Kilby") in Mt. Meigs, Alabama. Doc. 1. Plaintiff brings suits against the following defendants: Warden Karla Jones, Sergeants Renard Lewis and Brandon Daniels, and Kilby Officers Brandon Williams, Caronce Bryant, and Taveras Gilliam ("Defendants") for their alleged use of excessive force. *See id*. For relief, Plaintiff seeks monetary damages and requests the Court hold a jury trial on his claims. *Id*. at 4.

Pursuant to the Court's orders, Defendants filed an answer, special report, and supporting evidentiary material addressing Plaintiff's claims for relief. Docs. 20, 21, 35.[1] The Court subsequently informed Plaintiff that Defendants' special report, as supplemented, may, at any time, be treated as a motion for summary judgment, and the Court explained to Plaintiff the proper manner to respond to a motion for summary judgment. Doc. 22. Plaintiff filed his response to Defendants' special report. Docs. 26, 36. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the Court concludes that Defendants' motion for summary judgment (Doc. 20) is due to be **GRANTED** in part and **DENIED** in part.

---

[1] On March 1, 2022, the Court directed Defendants to conventionally file with the Court the video footage recorded on September 15, 2019. Doc. 30. Defendants complied with this Order. Doc. 35. The Court directed Plaintiff to file any response to Defendants' video exhibit on or before May 13, 2022. Doc. 33. On May 23, 2022, the Court received Plaintiff's "objection" signed and dated April 20, 2022. *See* Doc. 36 at 4.

I.   **Standard**

To survive the properly supported motion for summary judgment submitted by Defendants, Plaintiff must produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record." *Jones v. Wal-Mart Assocs., Inc.*, No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25, 2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to his case. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.") (citation and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."))

In this case, Plaintiff has established that there is a genuine issue as to a material fact to preclude summary judgment on his claims of excessive force asserted against Defendants Lewis, Daniels, Williams, Bryant, and Gilliam.

II.   **Factual Background**

By way of overview, Plaintiff commenced this pro se action for alleged violations of his

federally protected constitutional rights while confined at Kilby. Doc. 1. Plaintiff alleges, on September 15, 2019, after Defendants removed Plaintiff from his cell and handcuffed him, Defendants escorted Plaintiff to the infirmary, where, behind closed doors, Defendants "used deadly excessive force" against Plaintiff. Doc. 26 at 1. Plaintiff alleges, in the infirmary, Defendants assaulted Plaintiff with metal sticks, causing Plaintiff to "black out." Doc. 1 at 3; *see also* Doc. 26. Plaintiff maintains Defendants' assault amounted to "torture" and Plaintiff suffered a fractured tooth, fractured neck, and back injuries. Doc. 1 at 3. Plaintiff further alleges Defendant Jones "orchestrated" the assault and Defendants' actions further constitute "corruption, wrongful acts, unfair discrimination, negligence [and] cruel and unusual punishment." *Id*. Plaintiff asserts Defendants' use of excessive force violated his Eighth Amendment constitutional rights. *Id*.

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

On September 15, 2019, Defendant Lewis submitted a Duty Officer Report, describing an incident involving Plaintiff. Doc. 20-7 at 1. Pursuant to Defendant Lewis' report:

> On September 15, 2019, at approximately 11:00 am, [Defendant Lewis] instructed [Plaintiff] to turn around and to be placed in handcuffs for a routine search. [Plaintiff] refused and retrieved an inmate made knife from underneath his bed. [Defendant Lewis] instructed [Plaintiff] to give him the knife. [Plaintiff] refused and stated, 'You gone [sic] have to come get me.' [Defendant Lewis] informed [Defendant Warden Jones] of the incident and requested a cell extraction of [Plaintiff] due to him refusing to be placed in handcuffs. [Defendant Warden Jones] approved the extraction. [Defendant Lewis]; along with [Defendants Daniels, Williams, Gilliam, and Bryant and Officers Anthony Fenn and Quamie Richardson] reported to L-Block and extracted [Plaintiff]. [Plaintiff] received a medical assessment. [Plaintiff] was allowed to return to his assigned dorm and pending disciplinary action. Further information is forecoming [sic].

*Id*. Defendant Lewis also filed an Incident Report detailing the September 19 altercation. Doc. 20-8 at 1. According to the Incident Report:

> On September 15, 2019, at approximately 9:20 am, Correctional Officer Quamie Richardson escorted LPN Fallon Miles to L-Block for pill call. Nurse Miles gave [Plaintiff] his medication. Officer Richardson noticed that [Plaintiff] did not take his medication. Officer Richardson instructed [Plaintiff] to take his medication. [Plaintiff] did not comply with the directive given. Officer Richardson radioed for [Defendant Lewis] to report to L-Block. [Defendant Lewis] instructed [Plaintiff] to take his medication. [Plaintiff] told [Defendant Lewis] that he did not have the medication anymore. [Defendant Lewis] instructed [Plaintiff] to turn around to be placed in handcuffs. [Plaintiff] refused to comply. [Plaintiff] put his shoes on and retrieved an unidentified object from underneath his bed. [Defendant Lewis] questioned [Plaintiff] concerning the object he retrieved. [Plaintiff] stated, 'You gone [sic] have to come get me,' while clenching a pieces [sic] of sharpened metal wrapped in a blue cloth. [Defendant Lewis] instructed [Plaintiff] to give him the weapon. [Plaintiff] did not

3

comply with the directive. At approximately 10:00 am, [Defendant Lewis] contacted [Defendant Warden Jones], On-Call Official, via phone and informed her of the incident. [Defendant Lewis] requested a cell extraction of [Plaintiff] due to him refusing to be placed in handcuffs to perform a search of his cell and due to him possessing an object that could be used as a weapon. [Defendant Warden Jones] approved the extraction. [Defendant Lewis] constructed an extraction team. [Defendant Daniels] (camera man), and [Defendant Williams] (right arm[)], [Defendant Gilliam] (left leg), Anthony Fenn (shield man), [Defendant Bryant] (left arm), and Quamie Richardson (right arm), to report [to] the Shift Office and briefed them of the incident. [Defendant Lewis] returned to L-Block in an attempt to retrieve the weapon from [Plaintiff]. [Plaintiff] refused to relinquish the weapon. At approximately 11:15 am, [Defendant Lewis] reported to L-Block with the extraction team to extract [Plaintiff]. [Defendant Lewis] approached [Plaintiff's] cell and observed [Plaintiff] with a cloth wrapped around his face. [Defendant Lewis] instructed [Plaintiff] to relinquish the weapon and to turn around and to be placed in handcuffs. [Plaintiff] did not comply with the directive and became disorderly. [Defendant Lewis] yelled gas and administered a short burst of Sabre Red chemical agent toward [Plaintiff's] facial area. [Plaintiff] turn[ed] away and covered his face with the cloth. [Plaintiff] retrieved a cup of an unknown liquid substance and continuously threw the substance towards [Defendant Lewis] and the extraction team. [Defendant Lewis] gave [Plaintiff] several directives to relinquish the weapon. [Plaintiff] refused and threw toilet water towards the extraction team. [Defendant Lewis] yelled gas again and administered another burst of chemical agent to [Plaintiff's] facial area. [Defendant Williams] approached the cell and instructed [Plaintiff] to relinquish the weapon. [Plaintiff] complied with the directive and handed the weapon to [Defendant Williams]. [Defendant Williams] handed the weapon to [Defendant Lewis] and secured [Plaintiff] in handcuffs. [Plaintiff] was escorted to the Healthcare Unit for decontamination and a medical assessment. Upon arriving in the Healthcare Unit, [Defendant Lewis] removed one of [Plaintiff's] handcuffs for placement in the front. [Plaintiff] snatched away and swung at [Defendant Lewis]. [Defendant Lewis] attempted to restrain [Plaintiff]. [Defendants Gilliam, Bryant, and Williams] noticed the altercation and assisted with restraining [Plaintiff]. At approximately 11:45 am, LPN Sharita Thomas conducted a medical assessment on [Plaintiff] and completed an Inmate Body Chart Documentation Form. [Plaintiff] provided a written statement. Pictures were taken. [Plaintiff] was verbally reprimanded on his negative actions. [Plaintiff's] cell was decontaminated and [Plaintiff was] allowed to return to his assigned cell pending disciplinary action for failure to obey a direct order, possession of a device that can be used as a weapon and assault on an ADOC official. [Defendant Lewis] instructed all officers involved in the extraction to provide written statements and questioned them concerning any injuries sustained. [Defendant Williams] told [Defendant Lewis] that he received a small laceration to his right elbow and was covered with the liquid substance that was thrown. Officer Fenn told [Defendant Lewis] that he was covered with the liquid substance that was thrown. [Defendant Bryant] refused a body chart. [Defendant Lewis] completed a First Report of Injury Packet on [Defendants Williams and Gilliam]. Upon going home, [Defendant Bryant] noticed that he did injure his right foot while restraining [Plaintiff]. [Defendant Bryant] informed [Defendant Lewis] via phone of his injury. [Defendant Lewis] completed a First Report of Injury Packet on [Defendant Bryant]. [Defendant Gilliam] received medical treatment at Baptist Medical Center East

> Emergency Department. . . . [Defendant Gilliam] was restricted from work for 2 days and will follow-up with Dr. Vijay Tirumalasetty, Eastside Urgent Care. . . . [Defendant Bryant] received medical treatment at Dr. Patel, American Family Care…and will follow up on Tuesday, September 17, 2019. No further actions taken.

*Id*. at 1-2. Pursuant to the September 15, 2019, First Reports of Injury, Defendant Gilliam suffered a bruised right hand (Docs. 20-9, 20-10), Defendant Williams suffered a laceration to his right elbow (Docs. 20-11, 20-12), and Defendant Bryant suffered a right foot injury. Docs. 20-13, 20-14. Defendant Lewis' body chart further indicates, while Defendant Lewis suffered no injury, he had liquids thrown on him. Doc. 20-17 at 3.

According to Plaintiff's September 15 body chart, Plaintiff told medical personnel he was assaulted, and medical personnel noted Plaintiff suffered small lacerations on his chest and back, cuts on his upper and inner lip, edema on his upper right cheek, and redness to his face and right side of head. Doc. 20-16. Plaintiff also had an abrasion on his head. *Id*. Medical personnel referred Plaintiff for an "urgent" follow-up in one or two days due to the injuries Plaintiff sustained to his face. Doc. 36-1 at 4.

That same day, Plaintiff also provided the following written statement:

> I was assaulted by numerous officers using excessive force such as [Defendants Lewis, Williams, Bryant, Daniels, and Gilliam]. Violated Title 14-3-13 Alabama Code Oath of Office Violating [sic] by hitting me, kicking me, and busting my head with medal [sic] sticks, and chipping my front teeth, busting my lip, back injuries, and fract[ured] neck, causing pain and suffering. Violating Eighth Amendment Cruel and Unusual Punishment causing serious physical injuries with strong pain and suffering due to…police brutality causing physical torture in these wrongful acts. Violating Title 14-3-16 Alabama Code violating civil rights law to the extreme and is negligent violating constitutional provisions and doctrine.

Doc. 20-15. A few days later, Plaintiff submitted a sick call and on September 19, Plaintiff was seen by medical personnel. Doc. 20-20 at 23. Plaintiff stated he was in a recent altercation, and he sought medical treatment for his upper lip laceration. *Id*.

On September 21, Kilby staff conducted disciplinary hearings relating to the September 15 incident. Doc. 20-19 at 1-18. Plaintiff was ultimately found guilty of (1) unauthorized possession of a weapon or device that could be used as a weapon; (2) failure to obey a direct order of an ADOC employee; and (3) assault on a person(s) associated with ADOC. *See id*.

On September 24, the following Investigative Report was filed:

> On September 15, 2019, at approximately 9:20 am, Correctional Officer Quamie Richardson escorted LPN Fallon Miles to L-Block for pill call. Nurse Miles gave [Plaintiff] his medication. Officer Richardson noticed that [Plaintiff] did not take his medication. Officer Richardson instructed [Plaintiff] to take his medication. [Plaintiff]

5

did not comply with the directive given. Officer Richardson radioed for [Defendant Lewis] to report to L-Block. [Defendant Lewis] reported to L-Block. Officer Richardson informed [Defendant Lewis] that [Plaintiff] did not take his medication. [Defendant Lewis] instructed [Plaintiff] to take his medication. [Plaintiff] told [Defendant Lewis] that he did not have the medication anymore. [Defendant Lewis] instructed [Plaintiff] to turn around to be placed in handcuffs. [Plaintiff] refused to comply. [Plaintiff] put his shoes on and retrieved an unidentified object from underneath his bed. [Defendant Lewis] questioned [Plaintiff] concerning the object he retrieved. [Plaintiff] stated, 'You gone [sic] have to come get me,' while clenching a pieces [sic] of sharpened metal wrapped in a blue cloth. [Defendant Lewis] instructed [Plaintiff] to give him the weapon. [Plaintiff] did not comply with the directive. At approximately 10:00 am, [Defendant Lewis] contacted [Defendant Jones], On-Call Official, via phone and informed her of the incident. [Defendant Lewis] requested a cell extraction of [Plaintiff] due to him refusing to be placed in handcuffs to perform a search of his cell and due to him possessing an object that could be used as a weapon. [Defendant Jones] approved the extraction. [Defendant Lewis] constructed an extraction team. [Defendant Daniels] (camera man), and [Defendants Williams] (right arm[)], [Defendant Gilliam] (left leg), Anthony Fenn (shield man), [Defendant Bryant] (left arm), and Quamie Richardson (right arm), to report the Shift Office and briefed them of the incident. [Defendant Lewis] returned to L-Block in an attempt to retrieve the weapon from [Plaintiff]. [Plaintiff] refused to relinquish the weapon. At approximately 11:15 am, [Defendant Lewis] reported to L-Block with the extraction team to extract [Plaintiff]. [Defendant Lewis] approached [Plaintiff's] cell and observed [Plaintiff] with a cloth wrapped around his face. [Defendant Lewis] instructed [Plaintiff] to relinquish the weapon and to turn around and to be placed in handcuffs. [Plaintiff] did not comply with the directive and became disorderly. [Defendant Lewis] yelled gas and administered a short burst of Sabre Red chemical agent toward [Plaintiff's] facial area. [Plaintiff] turn[ed] away and covered his face with the cloth. [Plaintiff] retrieved a cup of an unknown liquid substance and continuously threw the substance towards [Defendant Lewis] and the extraction team. [Defendant Lewis] gave [Plaintiff] several directives to relinquish the weapon. [Plaintiff] refused and threw toilet water towards the extraction team. [Defendant Lewis] yelled gas again and administered another burst of chemical agent to [Plaintiff's] facial area. [Defendant Williams] approached the cell and instructed [Plaintiff] to relinquish the weapon. [Plaintiff] complied with the directive and handed the weapon to [Defendant Williams]. [Defendant Williams] handed the weapon to [Defendant Lewis] and secured [Plaintiff] in handcuffs. [Plaintiff] was escorted to the Healthcare Unit for decontamination and a medical assessment. Upon arriving in the Healthcare Unit, [Defendant Lewis] removed one of [Plaintiff's] handcuffs for placement in the front. [Plaintiff] snatched away and swung at [Defendant Lewis]. [Defendant Lewis] attempted to restrain [Plaintiff]. [Defendants Gilliam, Bryant, and Williams] noticed the altercation and assisted with restraining [Plaintiff]. All force ceased at this time.

The Investigating Official questioned [Defendant Gilliam] concerning the incident. [Defendant Gilliam] stated, '[Plaintiff] was refusing to give up a prison made knife and [Defendant Lewis] was getting up a Cell extraction Team. When we got to his cell he started throwing toilet water and shaving powder on us. At that time [Defendant Lewis] sprayed Sabre Red and he complied. When [sic] we got him out the cell enroute to

>Healthcare to be decontaminated. Upon [Defendant Lewis] taking the handcuffs off [Plaintiff] so he could be decontaminated, he swung on [Defendant Lewis'] facial area. At that time we proceeded to restrain [Plaintiff] by putting handcuffs back on him.'
>
>The Investigating Official questioned [Defendant Williams] concerning the incident. [Defendant Williams] stated, 'We were conducting a cell extraction on [Plaintiff] because he had a prison made knife and wouldn't give it up. After giving him several orders, he still wouldn't give up the knife and he started throwing a white liquid substance from him [sic] cell. [Defendant Lewis] sprayed him and he complied. After we took him to P-Ward to get decontaminated, he swung on [Defendant Lewis] and we took him to the ground to be restrained.'
>
>The Investigating Official questioned [Defendant Bryant] concerning the incident. [Defendant Bryant] stated, 'We were conducting a cell extraction on [Plaintiff] because he had a weapon inside his cell. The cell extraction was conducted on [Plaintiff]. After the extraction we escorted [Plaintiff] to P-Ward for a body chart. I then reported back to Restrictive Housing Unit.'
>
>The Investigating Officer questioned [Defendant Lewis] concerning the incident. [Defendant Lewis] stated, 'We were escorting [Plaintiff] from his cell for decontamination. He was in P-Ward. After I took the cuffs off, he swung at me. After he swung on [sic] me we struggle[d] to restrain him.'
>
>The Investigating Official questioned [Defendant Daniels] concerning the incident. [Defendant Daniels] stated, 'We conducted a cell extraction on [Plaintiff] due to him having a weapon. I recorded the extraction. There were several orders for [Plaintiff] to give up the knife and he refused. He starting [sic] throwing unknown substances on the extraction team. At that time [Defendant Lewis] sprayed [Plaintiff]. He then gave up the weapon and he was then taken to Health care for decontamination and medical evaluation.'
>
>The Investigating Official questioned [Plaintiff] concerning the incident. [Plaintiff] stated, 'I ain't got nothing to say to you. Talk to my lawyer.'
>
>It is the opinion of the Investigating Official that Use of Force against [Plaintiff] was reasonable, necessary, and justified due to [Plaintiff] assaulting [Defendant Lewis] by attempting to hit him. [Defendant Lewis] first reaction was to create space between the inmate and himself by restraining him immediately.

Doc. 20-18 at 1-2.

Additional facts are set forth as necessary.

**III.   Discussion**

In his three-count complaint and response, Plaintiff alleges, after Defendants extracted Plaintiff from his cell and handcuffed Plaintiff, Defendants then escorted Plaintiff to the infirmary, where, behind closed doors, Defendants used excessive force and tortured Plaintiff. Doc. 1 at 2-3; Doc. 26 at 1. Plaintiff maintains Defendants' actions amount to "corruption, wrongful acts, unfair discrimination,

7

negligence, [and] cruel and unusual punishment." Doc. 1 at 2-3. Plaintiff alleges, while handcuffed in the infirmary, Defendants hit Plaintiff with metal sticks, "busted" Plaintiff's head, and caused Plaintiff to "black out." Doc. 1 at 3; *see also* Doc. 26.  Plaintiff maintains, while he suffered a chipped tooth, fractured neck, and serious back injuries, Defendants failed to provide the documents evidencing his injuries. Doc. 26 at 2. Plaintiff further alleges Defendant Warden Jones "orchestrated" the September 15 assault the day before, "when she came up to Kilby" (Doc. 1 at 3), in retaliation for Plaintiff's "long history of [filing] civil complaints on her . . . ." Doc. 26 at 2.

Defendants assert, *inter alia*, Plaintiff's allegations are without merit, and they are entitled to immunity. Doc. 20.

### 1. Sovereign Immunity

The capacity in which Plaintiff brings suit against Defendants is not clear from the complaint. To the extent Plaintiff seeks to sue Defendants in their official capacity, however, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### 2. Qualified Immunity

Defendants argue, not only do Plaintiff's allegations fail as a matter of law, but also, Defendants are entitled to qualified immunity. "Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Skop [v. City of Atlanta*, 485 F.3d 1130, 1136-1137 (11th Cir. 2007)]. To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the

constitutional right violated was clearly established. *Fennell [v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)]. In Eighth Amendment excessive force cases, however, 'the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution.' *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)." *Bowden v. Stokely*, 576 Fed. App'x 951, 954-955 (11th Cir. 2014) (per curiam). "While . . . there is no *per se* rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate. *See Skrtich [v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)]." *Bowden*, 576 Fed. App'x at 956.

Accordingly, the Court will consider whether Plaintiff's allegations that, after the cell extraction, and while handcuffed, Defendants Lewis, Daniels, Williams, Bryant, and Gilliam kicked and assaulted Plaintiff with metal sticks causing Plaintiff to suffer a chipped tooth, fractured neck, and back and head injuries, all allegedly occurring behind closed doors, which the Court must take as true for purposes of summary judgment, sets forth a violation of Plaintiff's Eighth Amendment rights.

### a. *Excessive Force Claims*

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted).

Regarding the objective component, a plaintiff must show "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. (internal quotations omitted). In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). The Court, however, further directed that "the relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover." *Id*. at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not]

maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301. "When prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at 38 (internal quotations and citation omitted). Thus, in an excessive force case such as the one at hand, "the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Bowden*, 576 Fed. App'x at 953 (internal quotations and citation omitted).

Plaintiff's evidence reflects that, on September 15, 2019, after Defendants extracted Plaintiff from his cell, Plaintiff told medical personnel: "I was assaulted." Doc. 20-16 at 1. Kilby medical personnel noted that Plaintiff suffered small lacerations on his chest, back, and outer and inner lip. *Id.* Plaintiff also showed signs of edema on his upper right cheek and lip and redness to his face and head. *Id*. In his sworn complaint, however, Plaintiff alleges more serious injury including a chipped tooth, fractured neck, injured back, and "busted" head. Doc. 1 at 3. Plaintiff asserts, while handcuffed in the infirmary, Defendants kicked Plaintiff and beat him with metal sticks. *Id*.; *see also* Doc. 26 at 1. Plaintiff denies attempting to hit Defendant Lewis and contends, "Nurse Sharita Thomas," a witness to this incident, can corroborate Plaintiff's allegations. Doc. 26 at 2.

Even though Defendants dispute the version of events presented by Plaintiff, the Court is required at this stage of the proceedings to view the facts in the light most favorable to Plaintiff and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Correctional Service, Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); *Anderson v. Liberty Lobby*, 477 U.S. at 255 (all justifiable inferences are to drawn in favor of the party opposing summary judgment). In that vein, Plaintiff states, he did not try to hit Defendant Lewis in the infirmary, but that Defendants nonetheless, "used

deadly force," against Plaintiff with metal sticks and kicks while Plaintiff was handcuffed behind his back. Doc. 26 at 2. While Plaintiff's medical records do not reflect the injuries Plaintiff alleges, Plaintiff maintains in his response that his "witness Nurse Sharita Thomas documented these serious physical injuries that this poor prison admin. failed to note. . . ." *Id.* This version of the events could support an excessive force claim. *Bowden*, 576 Fed. App'x at 954.

While Defendants Lewis, Daniels, Williams, Bryant, and Gilliam deny Plaintiff's allegations of excessive force, viewing the facts in the light most favorable to Plaintiff, the Court concludes Defendants are not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive Defendants' motion for summary judgment regarding Plaintiff's excessive force claim. *Skrtich*, 280 F.3d at 1301; *see also Rivera v. LeBron*, 824 F. App'x 838, 842 (11th Cir. 2020) ("[E]vidence that merely 'pit[s] the correctional officers' word against' an inmate's is distinct from the type of videotape evidence that…definitively established what happened and what did not.'") (citations omitted).[2] Specifically, disputed issues of material fact exist regarding the need for the use of force, the nature of the force used, and whether Defendants acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment regarding Plaintiff's excessive force claim against Defendants Lewis, Daniels, Williams, Bryant, and Gilliam in their individual capacity is due to be DENIED.

  b.  *Conspiracy Claims*

Plaintiff also appears to contend Defendant Warden Jones conspired with other Defendants to assault Plaintiff. *See* Doc. 1. The Court has carefully reviewed Plaintiff's allegations of conspiracy and finds they allege no facts suggestive of conspiracy.

To establish a § 1983 conspiracy, "a plaintiff must show among other things, that the defendants reached an understanding to violate [his] rights." *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (internal quotation marks and citation omitted) (brackets in original). "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequately to show illegality. . . [T]hey must be placed in the context that raises the suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557.

---

[2]   The Court has reviewed the video footage provided by Defendants. Doc. 35. While the footage reflects Plaintiff was clearly argumentative and noncompliant while in his cell, the images fail to capture the events Plaintiff complains of in his civil complaint. Indeed, the video footage appears to end as soon as Plaintiff is escorted into the infirmary for decontamination and, therefore, fails to show what occurred inside the infirmary. In his "objection" to Defendants' exhibit, Plaintiff asserts the footage is "irrelevant" and "has nothing to do with the incident of this excessive deadly force on September 15, 2019 inside a room that's in the (P-Ward Infirmary) at [Kilby]. . . ." Doc. 36 at 1.

The Court has carefully reviewed Plaintiff's claim of conspiracy. His assertions are self-serving, purely conclusory allegations which fail to assert those material facts necessary to establish a conspiracy by Defendant Warden Jones and other Defendants. *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) (to properly state a claim for relief based on a conspiracy between private individuals and state actors, a plaintiff must plead that the offending parties "reached an understanding" to deny the plaintiff his constitutional rights); *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" acts, without showing contacts between private persons and state actors which could prove these parties "reached an understanding" to violate plaintiff's rights, is insufficient to demonstrate the existence of a conspiracy); *Tower v. Glover*, 467 U.S. 914, 920 (1984).

Here, Plaintiff alleges no facts suggesting a conspiracy or an agreement other than seemingly contending Defendant Warden Jones and remaining Defendants had a common goal, scheme, or purpose to violate his constitutional rights through excessive force. His inference of conspiracy regarding the actions of Defendant Warden Jones and the other Defendants about which he complains is insufficient to state a conspiracy claim. In consonance, Plaintiff's allegations are insufficient to allow the Court to draw the conclusion that a conspiracy claim is plausible. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted and may be dismissed). Because Plaintiff fails to state a claim for conspiracy, Defendants are entitled to qualified immunity and summary judgment is due to be GRANTED on this claim.

    c.  ***Retaliation Claims***

Last, Plaintiff alleges Defendant Warden Jones, in retaliation for Plaintiff filing civil suits and grievances, directed other Defendants to assault Plaintiff. *See* Doc. 1.

A claim that a plaintiff was penalized for exercising a constitutional right is properly considered under the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (*en banc*). The First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. *Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986); *Farrow v West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989); *Farrow*, 320 F.3d 1235, 1248 (11th Cir. 2003). Conclusory allegations of retaliation, however, cannot demonstrate the existence of each element requisite to establishing retaliation. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009), *overruled on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012), (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit ...

conclusory allegations as true"). *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

In ruling on an inmate's First Amendment retaliation claim, courts use a burden shifting analysis. *Moton v. Cowart*, 631 F.3d 1337, 1341-42 (11th Cir. 2011). A plaintiff must establish three elements: "(1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech." *Id.* at 1341 (internal quotations and citations omitted); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X*, 175 F.3d at 397. Regarding the causation prong a court "asks whether the defendants were subjectively motivated" by the plaintiff's protected act. *Smith*, 532 F.3d at 1278. If the plaintiff shows that "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Moton*, 631 F.3d at 1341-42 (quoting *Smith*, 532 F.3d at 1278). Upon production of evidence demonstrating a legitimate reason for the conduct and/or actions in question, the plaintiff, who has the ultimate burden of proof, must show there is a genuine dispute of material fact concerning the defendant's defense. *See Osterback v. Kemp*, 300 F.Supp.2d 1238, 1254 (N.D. Fla. 2003). Because any adverse action taken against a prisoner by a prison official can be characterized by the inmate as a retaliatory act, federal courts must "carefully scrutinize" retaliation claims brought by prisoners challenging adverse actions of correctional personnel, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and "approach prisoner claims of retaliation with skepticism and particular care." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). "This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In his complaint, Plaintiff asserts, on September 15, prior to the alleged use of excessive force, Plaintiff asked Defendants Williams and Lewis "to call [Defendant] Karla Jones." Doc. 1 at 3. Plaintiff maintains, when Defendants Williams and Lewis returned, they told Plaintiff: "She said she ain't [sic] comin[g] no muthfucken [sic] where." *Id*. Plaintiff further alleges, after the use of excessive force, Plaintiff "was notified by the Correctional Officers that [Defendant] Warden Karla Jones orchestrated and design[ed] the attack the day before Sept. 14, 2019[,] when she came up to Kilby Facility and that's why she didn't come to resolve the problem." *Id*.

Relating to Defendant Warden Jones' knowledge of the September 15 use of force, Defendant Lewis testifies,

> On the said day, Officer Quamie Richardson informed me that [Plaintiff] did not take his medicine when the Nurse gave it to him. I reported to the area and instructed [Plaintiff] to turn around to be placed in handcuffs so I could search his cell. [Plaintiff] refused to comply with the directive given and told me that his name was Chief and he don't put handcuffs on. I instructed [Plaintiff] to be placed in handcuffs again. [Plaintiff] refused and retrieved an inmate made knife from underneath his bed. I instructed [Plaintiff] to give me the knife. He refused to give me the knife. I informed [Defendant] Warden Jones of the incident and requested permission to form an extraction team to retrieve the knife. [Defendant] Warden Jones approved my request.

Doc. 20-1 at 1. Defendant Warden Jones also testifies:

> I have reviewed incident report KCF-19-01549 dated September 15, 2019, regarding [Plaintiff], Failure to Follow Order and Use of Force. I was not present during the incident but was aware of [Plaintiff's] behavior on date in question. [Plaintiff] refused to be placed in handcuffs after he was observed with a weapon (prison-made knife). After refusing to follow orders of the supervisor to be handcuffed, I approved of a Cell Extraction to obtain the weapon. The Cell Extraction Team was formed along with a camera/video person. The Supervisor [Defendant Lewis] again gave [Plaintiff] instructions to relinquish the weapon. [Plaintiff] refused and was observed with a cloth wrapped around his face. [Defendant] Lewis administered the chemical agent into [Plaintiff's] cell. [Plaintiff] threw an unknown substance toward the Extraction Team. After multiple orders to relinquish the weapon, [Plaintiff] complied by dropping the weapon and was handcuffed. After he was escorted to the Health Care Unit for decontamination, one side of handcuffs was removed and [Plaintiff] snatched away and swung on [Defendant] Lewis. [Defendant] Lewis and [Defendants Gilliam, Bryant, and Williams] restrained [Plaintiff] and a body chart was completed. The body chart noted a small laceration on chest, back and redness to torso, face and right side of head. He was released by medical and returned to his cell pending disciplinary action for Assault with a weapon on a Person Associated with ADOC and Possession of a Weapon. [Defendant] Gilliam injured his right hand and later received treatment at Baptist East Hospital. [Defendant] Williams received a small laceration to his right elbow and was treated at Eastside Urgent Care.

Plaintiff's filing of grievances or lawsuits constitutes protected conduct under the First Amendment. Regarding the second element, the Court finds Plaintiff fails to indicate what deterrence Defendant Warden Jones' conduct about which he complains had on exercising his First Amendment rights. *See Bennett*, 423 F.3d at 1250 (internal citations omitted) ("plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights"). "A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision 'subject to exhaustive challenge,' solely because he was engaged in a First Amendment right." *Adams v. James*, 784 F.2d 1077, 1082 (11th Cir. 1986); *Adams*

14

*v. James*, 797 F. Supp. 940, 949 (M.D. Fla.1992)." *Cranford v. Hammock*, 2010 WL 916031 *8 (N.D. Fla. 2010).

Defendant Warden Jones affirms she gave permission for the cell extraction team to extract Plaintiff from his cell. She has also shown, however, a legitimate reason for doing so. Indeed, upon review of the video exhibit provided by Defendants showing the September 15, 2019, extraction, the footage shows Plaintiff was noncompliant with Defendant Lewis' directives and was ultimately pepper sprayed twice. *See* Doc. 35. The video's audio demonstrates Plaintiff was verbally combative and the images show Plaintiff threw an unknown liquid substance on Defendants. *Id*. Plaintiff neither disputes the events from the video, nor claims he was falsely accused of having a prison-made knife. Plaintiff has submitted no direct evidence that his grievances or other legal activities motivated the cell extraction approved by Defendant Warden Jones or motivated the alleged use of force in the infirmary. Defendant Warden Jones has submitted admissible evidence which reflects that approving the cell extraction was not predicated upon a retaliatory motive but rather, was due to Plaintiff's failure to comply with Defendant Lewis' directives to relinquish a weapon.

In sum, Plaintiff's allegations that Defendant Warden Jones directed he be extracted from his cell on September 15, 2019, and assaulted in the infirmary, in retaliation for filing grievances or lawsuits is insufficient and unsupported by the record. In light of the foregoing, Defendant Warden Jones is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim and Defendants' motion for summary judgment is due to be GRANTED on this claim. As the Court finds Defendant Warden Jones is entitled to qualified immunity on Plaintiff's claims, Defendant Warden Jones is due to be DISMISSED from this case.

**IV.    Conclusion**

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 20) be GRANTED in part and DENIED in part as addressed herein.

2. Defendants' motion for summary judgment regarding Plaintiff's claims for monetary damages lodged against Defendants in their official capacity be GRANTED and these claims be DISMISSED with prejudice as Defendants are entitled to absolute immunity from such relief.

3. Defendants' motion for summary judgment regarding Plaintiff's claims of conspiracy and retaliation asserted against Defendants in their individual capacity be GRANTED.

4. Defendants' motion for summary judgment regarding Plaintiff's claim of excessive force lodged against Defendants Lewis, Daniels, Williams, Bryant, and Gilliam in their individual capacity be DENIED.

5. Defendant Warden Jones be DISMISSED from this case with prejudice.

6. This case be set for a jury trial on Plaintiff's excessive force claims asserted against Defendants Lewis, Daniels, Williams, Bryant, and Gilliam.

It is further

ORDERED that **on or before July 1, 2022,** the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 17th day of June 2022.

/s/ Charles S. Coody
CHARLES S. COODY,
UNITED STATES MAGISTRATE JUDGE